# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DOLLIE PETRY-FOREMAN** | * | **CIVIL ACTION NO. 15-2185** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Dollie Petry-Foreman, born in 1960, filed an application for a period of disability and disability insurance benefits on February 26, 2013, alleging disability as of August 1, 2012, due to fibromyalgia, degenerative arthritis, osteoarthritis, anxiety, depression and panic disorder.  After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision denying claimant's claim for benefits on July 21, 2014.  (Tr. 5-19).

Following the Appeals Council's denial of claimant's request for review (Tr. 1-3), claimant filed an action for judicial review in this Court on August 14, 2015.

## I. FINDINGS AND CONCLUSIONS

### A.  Standard of review

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. *Id*. at 393.

## B.  Burden of Proof

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. *Cook,* 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015). The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work;

2

and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified.  *Id*. at 1302.  Throughout the process, the ultimate burden of establishing disability remains with the claimant.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

## C. Analysis

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is supported by substantial evidence, based on the following:

### 1.  Medical Evidence[1]

Claimant complains primarily of fibromyalgia.  She was treated by Dr. Amarendar R. Kasarla at Anesthesiology and Pain Consultants for lumbar radiculopathy, chronic low back pain

---

[1]Although of the medical evidence was reviewed, only those relating to the arguments are summarized herein.

and lumbar spondylosis from October 2004 through June 2005.  (Tr. 296-341).  She had back surgery in 2005.  (Tr. 290, 340).

Dr. Ronald M. Lahasky, internist, treated claimant from March 2008 through August 2013, and offered no fibromyalgia-related findings.  (Tr. 185-91).  He indicated longstanding use of Klonopin with attempts to wean off.  (Tr. 189).  His records indicated a diagnosis of osteoarthritis in June, 2009, but failed to document any ongoing signs or symptoms.  He assessed joint pain in April 2010.  In October 2010 and November 2011, he noted no related findings.

On October 31, 2011, claimant saw Dr. Joseph M. Kowalski, cardiologist.  (Tr. 226).  At that time, she was walking two miles a day.  She had no pain, psychiatric symptoms, gastrointestinal or neurological concerns.  Dr. Kowalski's treatment notes revealed no pain complaints at any time.

On June 26, 2012, Dr. James M. Lipstate, rheumatologist, examined claimant for "pain all over."  (Tr. 178).  She complained of frequent muscle tension headaches, irritable bowel syndrome ("IBS"), temporomandibular joint ("TMJ") syndrome and nighttime restlessness.  She denied any cardiac difficulties, bladder issues, hematologic problems, or focal neurologic deficits.  (Tr. 178-79).

Examination revealed myofascial tenderness in the lower back and lumbosacral area, and tenderness over the hips and inner aspects of the knees.  (Tr. 179).  Range of motion was good. Ankles and feet had normal appearance, and strength and reflexes were normal.  Straight leg testing was negative.  Dr. Lipstate suspected fibromyalgia, and recommended laboratory studies to rule out other causes.

4

On October 9, 2012, claimant was having good and bad days with fibromyalgia.  (Tr. 176).  She complained of some fatigue, joint aches and stiffness, with some days not very symptomatic allowing her to work in her yard, *etc*.  On examination, her joints were not inflamed or swollen, and lower extremities moved well, with some aches and stiffness.

On examination by Dr. Kowalski on November 20, 2012, claimant had no pain, limited range of motion, psychiatric concerns, or head, eye, ear, nose or throat problems.  (Tr. 220).  Her examination was essentially unremarkable.  (Tr. 220-21).

Dr. Lipstate reported on January 22, 2013, that hand x-rays were essentially unremarkable.  (Tr. 175).  On March 26, 2013, claimant complained of "fibro fog."  (Tr. 173).  She was tolerating Cymbalta, Clonazepam, Ultracet and Cyclobenzaprine well.  Examination revealed some myofascial tension across the paracervical and trapezius areas.  Joints were not actively red or inflamed, and lower extremity joints moved reasonably well.  Dr. Lipstate prescribed B12 injections for fatigue, and Topiramate.

On June 19, 2013, claimant returned to Dr. Kowalski with no complaints of musculoskeletal pain, muscle cramps, weakness or any abnormalities on examination, including mouth/oral.  (Tr. 213-15).  On July 2, 2013, assessment revealed only tobacco abuse.  (Tr. 207).  Dr. Kowalski prescribed Tramadol at claimant's request.  (Tr. 208).

On June 26, 2013, claimant presented to Tamera Lafleur Fontenot, APRN, FNP,[2] with complaints of soft tissue pain in many areas of the body.  (Tr. 170).  She had 18/18 trigger points.

---

[2]Under the Social Security regulations, only "acceptable medical sources" may be considered to establish whether a claimant has a medically determinable impairment.  20 C.F.R. § 404.1513.  "Acceptable medical sources" are licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists.  Nurse practitioners are not acceptable medical sources.

(Tr. 171).  However, joints had full range of motion, back was nontender and neck was supple. (Tr. 170).  Extremities had no edema.  Neurological exam was nonfocal and grossly intact.  (Tr. 170-71).  The assessment was fibromyalgia and myositis, unspecified.  (Tr. 171).  Ms. Fontenot told her to increase exercising, as claimant had not been doing so.

On July 11, 2013, LaBorde Therapy Center sent a letter to Dr. Lipstate indicating that claimant had stated that she no longer needed FCE for her disability.  (Tr. 241).

Claimant returned to Dr. Lahasky on August 5, 2013, for complaints of a cough.  (Tr. 187).  She was in no acute distress.  Her neck was supple, with full range of motion.  The assessment was acute sinusitis.  Dr. Lahasky continued Cymbalta, Klonopin and Ultracet.  (Tr. 188).

On August 28, 2013, Dr. W. Miller Logan prepared a Psychiatric Review Technique for Disability Determination Services ("DDS"), in which he opined that claimant did not have a severe mental impairment as she had not been prescribed mental health treatment, did not have a formal diagnosis, and had fairly active activities of daily living.  (Tr. 41-42).

After an eight-year gap, claimant returned to Dr. Amarendar Kasarla on August 29, 2013, reporting no back pain since having back surgery in 2005.  (Tr. 269).  She reported a diagnosis of fibromyalgia and trouble with sleep, anxiety and pain.  Examination revealed moderate tenderness of the cervical spine without trigger point localization and radiation.  (Tr. 270-71).  Palpation of the lumbar spine was normal and without pain.  (Tr. 271).  Straight leg raise was negative bilaterally.

Screening for fibromyalgia was positive based on tenderness in key areas.  Dr. Kasarla recommended medication management, physical therapy and exercises, including 30 minutes of

6

walking twice daily, followed by walking stairs for 10 minutes.

Dr. J.R. Vorhies prepared a Physical Residual Functional Capacity ("RFC") Assessment on September 2, 2013, in which he determined that claimant was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking and sitting about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 43).

On November 20, 2013, Dr. Lipstate found claimant in good general health. (Tr. 239). Examination revealed tenderness over the radial aspect of her left wrist and tender point along medial epicondyle of left elbow. Hips and knees moved well overall. Ankles were nontender. Strength was good, and reflexes were normal. Neurological exam was nonfocal. Claimant had no abdominal tenderness.

Dr. Lipstate found claimant's fibromyalgia stable. He noted that she seemed to have a component of de Quervain's tenosynovitis[3] of the left wrist, and gave her an injection of Depro-Medrol to relieve her tendinitis.

On December 4, 2013, claimant reported to Dr. Kowalski that she was exercising by walking daily. (Tr. 203). She denied any fatigue/weakness, chills, sweats, malaise, sleep disorder, shortness of breath, dizziness, frequent headaches, difficulty walking, or constant tiredness. (Tr. 204). She denied any diarrhea, constipation, change in bowel habits, abdominal pain, heartburn, dysphagia, urinary frequency, back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, arthritis, sciatica, restless legs, nocturnal leg pain or leg pain

---

[3] De Quervain's disease is defined as "fibrosis of the sheath of a tendon of the thumb." *Gray v. Colvin*, 2014 WL 1153077, at *5 n. 7 (S.D. Miss. Mar. 21, 2014) (*citing Stedman's Medical Dictionary* 495 (26th ed. 1995)).

with exertion.  (Tr. 205).  She denied any eye or psychiatric problems.

On examination, claimant's gait and station were normal and steady.  (Tr. 206).  Her back had normal alignment and mobility.  Muscle strength/tone was normal.  Skin, digits/nails were normal.  She was in no acute distress.

An MRI taken on December 6, 2013, showed degenerative disc disease and spondylosis at C4-5, C5-6 and C6-7.  (Tr. 261).  A lumbar MRI dated December 12, 2013, revealed a previous L4-5 microdiscectomy and mild spondylosis.  (Tr. 254).

On December 9, 2013, claimant's neck pain was much better, but she complained of mid-back pain.  (Tr. 255).  Dr. Kasarla recommended medication management of claimant's chronic pain.  (Tr. 251).  He also instructed her to follow a home exercise program, including walking for 30 minutes twice daily followed by walking stairs for 10 minutes.

On February 25, 2014, claimant reported to Dr. Kasarla that her neck pain was reduced, and her mid-back pain was much better.  (Tr. 242).  Her medications were helping.  Findings on examination were essentially unchanged.

On April 24, 2014, Dr. Kasarla filled out a Fibromyalgia Questionnaire, in which he reported that claimant suffered repeated manifestations of fibromyalgia symptoms, including muscle pain, IBS, fatigue/tiredness, thinking or remembering problems, muscle weakness, headache, numbness or tingling, depression, anxiety, constipation, nervousness, blurred vision, diarrhea, dry eyes, bladder spasm, TMJ disorder, migraine, and restless leg syndrome.  (Tr. 200). He reported that claimant had suffered from 10 years of widespread pain, which was getting worse.  (Tr. 198).  He circled eight positive tender point sites.  (Tr. 199).  He checked that he had excluded other conditions which could cause similar symptoms or signs.

8

### 2. Hearing Testimony

At the hearing held on May 9, 2014, claimant was 53 years old.  (Tr. 26).  She testified that she was five feet tall and weighed 140 pounds.  She had a driver's license and was able to drive.  (Tr. 27).

Claimant graduated from high school and attended VoTech school for 13 months for her LPN.  (Tr. 31).  She had last worked as an LPN on an as-needed basis.

Claimant took medications for depression, pain, anxiety and panic disorder, and muscle spasms.  (Tr. 27).  She testified that the medications for panic disorder and muscle spasms made her groggy.  She also took Ambien for insomnia, allowing her to sleep five to six hours depending on the amount of pain and stress she had.  (Tr. 27-28).

Additionally, claimant testified that she had degenerative disc disease and two herniated discs in her neck.  (Tr. 28).  She reported that she had lower back surgery for a herniated disc in 2005, and that her doctor recently told her that she would eventually have to have surgery for scarring in the surgical area.  She stated that her low back pain radiated down her leg at times.  She also had crying spells, particularly when she was in a lot of pain.  (Tr. 29).

Claimant also reported having panic attacks.  She became very afraid and nervous, which could happen in a store and caused her to leave.  She had problems bathing and dressing at times.  (Tr. 29-30).  She did the dishes and laundry, but did not always finish at one time or on the same day.  (Tr. 30).

Regarding limitations, claimant could walk for five to 10 minutes and lift five pounds.  (Tr. 32).  She could sit for five minutes at most, and stand (but not still) for 10 minutes.  She used a computer, but did not type for any length of time.  (Tr. 33).  She said that she dropped

things occasionally.  (Tr. 32).

Claimant felt that she was in a fog from fibromyalgia, and had difficulty concentrating on the simplest of things.  (Tr. 33-34).  If she drove somewhere, she had to map it out first. Otherwise, she got lost.  (Tr. 34).  Her fibromyalgia flared up every three to four days, which kept her from doing anything.  During that time, she just alternated between lying down to sitting to standing.

William M. Stampley, Jr., who testified as a vocational expert ("VE"), classified claimant's past work as a licensed practical nurse as medium and skilled.  (Tr. 36).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education and work experience, with limitations to light work, lifting only 20 pounds occasionally and 10 pounds frequently, and standing, walking and sitting for six hours out of eight with normal breaks.  In response, Mr. Stampley testified that claimant could not return to her past job, but could work as a cannery worker, of which there were 6,200 positions statewide and 426,670 nationally; laundry bagger, of which there were 2,940 positions statewide and 672,020 nationally, and housekeeping cleaner, of which there were 13,900 positions statewide and 917,470 nationally.  (Tr. 37).

The ALJ changed the hypothetical to assume a claimant with the same background, who would be able to stand and walk only a few minutes, and unable to sit for a total of six hours in an eight-hour workday.  In response, the VE testified that no jobs would be available.

### 3.  Argument

Claimant argues that "[d]espite finding that Plaintiff's fibromyalgia was a 'severe impairment,' the ALJ included no related limitations in the RFC assessment, in clear

contravention of unambiguous Agency policy.  At a bare minimum the ALJ's failure to provide any substantive analysis of fibromyalgia as prescribed by the Agency policy undermines the ALJ's assessment of Plaintiff's pain complaints."

The ALJ found that claimant had severe impairments of fibromyalgia, arthritis and lumbar degenerative disc disease.  (Tr. 10).  He analyzed her impairments under the requirements of *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  In *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), the Fifth Circuit reiterated the *Stone* standard as follows: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  (emphasis added).  *Id*. at 391 (*citing Stone*, 752 F.2d at 1101).

Claimant argues that the ALJ failed to properly analyze her complaints of fibromyalgia under SSR 12-2p, which sets forth the Social Security Administration's ("SSA") policies for assessing this impairment.  This Ruling recognizes that: "[w]idespread pain and other symptoms associated with FM [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories . . . .  People with FM may also have nonexertional physical or mental limitations because of their pain or other symptoms.  Some may have environmental restrictions, which are also nonexertional."  Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2p (July 25, 2012).

Under SSR 12-2p, the SSA follows a two-step process to evaluate a claim of fibromyalgia as follows:

A. First step of the symptom evaluation process. There must be medical signs and findings that show the person has an MDI(s) [medically determinable impairment] which could reasonably be expected to produce the pain or other symptoms alleged. FM which we determined to be an MDI satisfies the first step of our two-step process for evaluating symptoms.

B. Second step of the symptom evaluation process. Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

SSR 12-2p.

The undersigned starts by noting that SSR 12-2p does not require the ALJ to explain in writing the details of how he evaluated plaintiff's condition. *James v. Colvin*, 2015 WL 6394423, at *22 (S.D. Tex. Sept. 30, 2015), *report and recommendation adopted sub nom. James v. Comm'r of Soc. Sec.*, 2015 WL 6440301 (S.D. Tex. Oct. 21, 2015). It is enough that the ALJ set out the criteria for determining whether fibromyalgia is a medically determinable impairment and stated that he considered the evidence in light of that criteria. *Id*.

Here, the ALJ determined that claimant's fibromyalgia was a severe impairment. (Tr. 10). However, the mere presence of fibromaylgia does not establish disability. *Bordelon v. Astrue*, 281 F.App'x. 418, 422 (5th Cir. 2008) (*citing Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling *per se*. Plaintiff must show

that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity.")); *McLendon v. Barnhart*, 184 F. App'x. 431, 431 (5th Cir. 2006); *Heck v. Colvin*, 2016 WL 4004577, at *15 (E.D. La. Apr. 6, 2016), *report and recommendation adopted*, 2016 WL 3971007 (E.D. La. July 25, 2016).

In assessing claimant's fibromyalgia, the ALJ found that the record was absent of evidence of ongoing widespread pain in all body quadrants.  (Tr. 16).  He noted that while the evidence indicated tenderness, the record failed to show that other disorders that could have caused the symptoms or signs were excluded.  He also observed that while Dr. Lipstate had recommended testing, the record fails to show that it was performed.  (Tr. 17, 179).

Additionally, the ALJ considered claimant's activities in his determination.  He noted that while it was reasonable to expect that she would have some limitation in her activities because of her impairments, no doctor had advised her not to work.  (Tr. 16).  *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled).

Further, the ALJ observed that rather than restricting claimant's activities, Dr. Karsala repeatedly recommended that claimant exercise, including 30 minutes of walking twice daily followed by walking stairs for 10 minutes. (Tr. 16, 251, 258, 266, 271).  He also noted that while Dr. Lipstate had recommended physical therapy, claimant had canceled it, stating that it was no longer needed.  (Tr. 241).  It is well established that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

13

Moreover, the ALJ noted that despite claimant's alleged impairments, she was able to cook, launder, mow, drive, manage care for herself and her 85-year-old mother, perform daily chores, take care of her pets, shop in stores one to two times per week, watch a few telephone programs, swim four to six times a week, ride a four-wheeler, talk on the telephone, use the computer and spend time with friends.  (Tr. 16, 130-33).  She also volunteered at the local park one to two times per month, and sold t-shirts with other volunteers.  (Tr. 17, 134).  It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995).

Claimant also argues that the ALJ erred in assigning no weight to Dr. Kasarla's fibromyalgia questionnaire.  [rec. doc. 9, p. 7].  The ALJ accorded this opinion no weight, as the overall medical record failed to support Dr. Kasarla's statement indicating that claimant had repeated FM symptoms.  (Tr. 17).  While claimant asserts that Dr. Lipstate reported her complaints of IBS, TMJ, and restless extremities at night [rec. doc. 9, p. 8], the record confirms that claimant had not been actually *treated* for these conditions.  (emphasis added).  (Tr. 190).  In fact, she repeatedly denied these complaints to Dr. Kowalski.  (Tr. 204-06, 213-15, 220, 222).

Additionally, the ALJ observed that while Dr. Kasarla reported that claimant suffered from 10 years of widespread pain, his treatment notes showed an absence of treatment from 2005 until August 2013.  (Tr. 17, 242).  It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps

14

in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms).

Further, the ALJ noted while Dr. Kasarla reported that claimant had at least 11 positive points on examination, he circled only eight points.[4]  Claimant counters that Tamera Lafleur Fontenot, APRN, FNP, found 18/18 trigger points on examination.  [rec. doc. 9, p. 7; Tr. 171].  Ms. Fontenot, however, was not an acceptable medical source under the regulations.  Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.  *Thibodeaux v. Astrue*, 324 F. App'x. 440, 445 (5th Cir. 2009).

The undersigned also observes that Dr. Karsala's questionnaire was in a form containing numerous questions, some requiring narrative answers and others merely responsive checkmarks, regarding claimant's condition.  Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records.  *Heck*, 2016 WL 4004577, at *12 (E.D. La. Apr. 5, 2016) (*citing Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Peck v. Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (ALJ provided legitimate reasons for rejecting doctor's

---

[4]SSR 12-2p requires claimant to satisfy the criteria of the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria.  Pursuant to the referenced provisions of SSR 12-2p, an ALJ may find that a person has a medically determination impairment of fibromyalgia if she has, *inter alia*, at least 11 (of 18 possible) positive tender points on physical examination. *Bilberry v. Colvin*, 2014 WL 982845, at *5 n. 2 (N.D. Tex. Mar. 12, 2014).

opinion consisting "of checked boxes [38]  and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the treatment notes); *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.")).  Thus, the ALJ was entitled to give this opinion no weight.

Next, claimant argues that the ALJ failed to properly evaluate the opinion of Dr. Kasarla, whom she contends was the only treating or examining doctor offering an opinion in this case. [rec. doc. 9, p. 8].  It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . .  other substantial evidence."  *Newton*, 209 F.3d at 455.

16

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Id*. at 456; *Greenspan*, 38 F.3d at 237.

Claimant asserts that the ALJ erred in failing to consider the factors for rejecting a treating physician's opinion under 20 C.F.R. § 404.1527(b) and (c).  In *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), the Fifth Circuit held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization.  *Id*. at 621 (*citing Newton*, 209 F.3d at 456); 20 C.F.R. §§ 404.1527(c) and 416.927(c).

While claimant asserts that Dr. Kasarla was the *only* treating or examining physician, that is not the case.  (emphasis added).  [rec. doc. 9, p. 8].  Claimant was also treated by Drs. Lahasky, an internist; Dr. Kowalski, a cardiologist, and Lipstate, a rheumatologist.  It is well established that the opinion of a specialist  generally is accorded greater weight than that of a non-specialist.  *Newton*, 209 F.3d at 455; 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011) ("the Commissioner may give less weight to a treating physician's opinion about a condition outside his area of expertise.").

Further, because other treating physicians' opinions were available, the ALJ was not required to analyze the criteria for rejecting Dr. Kasarla's treating source opinion.  The Fifth

Circuit has held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical evidence contradicting that opinion.  *Jones v. Colvin*, 638 F.App'x 300, 304 (5th Cir. 2016); *Qualls v. Astrue*, 339 F.App'x 461, 467 (5th Cir. 2009) ("the *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it"); *see also Thibodeaux*, 324 F. App'x. at 445 (*citing Newton*, 209 F.3d at 453, 456) (when the record contained "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

Here, in controverting Dr. Kasarla's opinion, the ALJ relied on the opinions of Drs. Lahasky, Lipstate and Kowalski, who were also treating physicians.  Thus, unlike *Newton*, there is competing first-hand medical evidence available.  *See Newton*, 209 F.3d at 458 ("This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.  Nor is this a case where the ALJ weighed the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion.").   Conflicts of evidence are for the Commissioner, not the courts, to resolve.  *Heck*, 2016 WL 4004577, at *15 (*citing Byrd v. Comm'r of Soc. Sec.*, 368 F. App'x. 542, 543 (5th Cir. 2010)).  Thus, the ALJ was free to find that the other treating physicians' opinions were more well-founded than Dr. Kasarala's, and was therefore not required to specifically consider each of the § 404.1527 factors before reaching a final decision.  *Jones*, 2016 WL 158016, at *3; *Qualls*, 339 F.App'x at 467.

Next, claimant argues that the ALJ in assigning great weight to the State Agency non-examining reviewer.  [rec. doc. 9, p. 9].

The Social Security Regulations provide that state agency medical consultants are considered as experts in Social Security evaluation and their findings must be treated as expert opinion evidence:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. 416.927(e)(2)(i); *see also* SSR 96-6p (July 2, 1996) ("[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review."); *Hardin v. Astrue*, 2011 WL 1630902, at *7 (N.D. Tex. Mar. 31, 2011), *report and recommendation adopted*, 2011 WL 1633132 (N.D. Tex. Apr. 29, 2011) (State agency medical or psychological consultants are considered experts in the Social Security disability program and their opinions may be entitled to great weight if they are supported by the evidence.).

Here, claimant argues that the ALJ erred in assigning great weight to the state agency opinion of Dr. Vohries, particularly in light of the fact that he had no access to Dr. Kasarla's updated opinion and treatment notes.  [rec. doc. 9, p. 9].  The ALJ noted that he had reviewed the

new evidence, but found that it did not substantially affect the medical consultant's opinion that claimant retained the capacity to perform light work.  (Tr. 17).  He noted that the record showed that claimant was able to drive, shop, manage her 83-year-old mother's care, care for pets, spend time with others, mow regularly and use a four-wheeler.  As stated above, it is appropriate for the ALJ to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett*, 67 F.3d at 565 n. 12.

Further, the ALJ stated that there was no persuasive evidence in the record to contradict the state agency medical consultant's opinion.  (Tr. 17-18).  The ALJ's resolution of conflicting evidence in the record is entitled to considerable deference.  *Vaughn v. Colvin*, 589 F. App'x. 238, 242 (5th Cir. 2014) (*citing Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).  Thus, the ALJ was entitled to accord Dr. Vorhies' opinion great weight.

Claimant also argues that the ALJ's residual functional capacity assessment is not supported by the evidence, citing Social Security Ruling 96-8p, which provides, in pertinent part, as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p (July 2, 1996).

In particular, claimant asserts that the ALJ's RFC assessment fails to meet controlling legal standards because he failed to include any limitations due to her severe impairment of

fibromyalgia.  [rec. doc. 9, p. 3].  She argues that the ALJ failed to include all limitations he found resulting from her impairments in his hypothetical questions to the VE.

In support of her argument, claimant cites *Quintanilla v. Astrue*, 619 F.Supp.2d 306 (S.D. Tex. 2008), which stated that: "[i]f the ALJ's questions to the vocational expert do not incorporate all the functional limitations he *finds*, his determination is not supported by substantial evidence."  (emphasis added).  *Id*. at 323.  Claimant omits the rest of that paragraph, which continues as follows:

> The applicant must also have a chance to cross-examine the expert, and to correct deficiencies in the ALJ's question. *Id. An applicant waives his right to challenge a hypothetical on review if he does not address its deficiencies at the hearing. See Wise v. Barnhart*, 101 Fed.Appx. 950, 951 (5th Cir. 2004) (*per curiam*) (unpublished) (*citing Bowling*, 36 F.3d at 436)[5]; *Rivera v. Barnhart*, 64 Fed.Appx. 416 (5th Cir. 2003) (per curiam) (unpublished).

*Id*. at 323.

Here, claimant was represented by an attorney at the hearing; thus, he waived his right to challenge any deficiencies in the hypothetical questions.  Additionally, *Quintanilla* states that applies only when the ALJ's hypothetical fail to incorporate all of the functional limitations that he *finds*.  (emphasis added).  The ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately *rejected* by the ALJ.  (emphasis added).  *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La. 2000).  Because the ALJ did not *find* any functional limitations due to fibromyalgia, this argument lacks merit.  (emphasis added).

---

[5]*Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).

## II. CONCLUSION

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 30th day of August, 2016, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**